UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------
RUBEN SLACKS,

                Plaintiff,

   -v.-                                                      9:07-CV-510
                                                               (NAM)(GJD)

C.O. GRAY, et al.,

                Defendants.
----------------------------------------------------------------------

APPEARANCES                                   OF COUNSEL

Ruben Slacks
92-A-6182
Eastern Correctional Facility
P.O. Box 338
Napanoch, New York 12458
Plaintiff, *Pro Se*

New York State Attorney General        Christina L. Roberts-Ryba, Esq.
The Capitol
Albany, NY 12224, Asst. Attorney General
Attorney for Defendants

**Hon. Norman A. Mordue, Chief U.S. District Judge**

## MEMORANDUM DECISION and ORDER

In this civil rights complaint, plaintiff alleges that he was assaulted by defendants Gray, Farrell, and Fischer, while defendant Hauck[1] watched, but failed to intervene. Plaintiff also claims that he was denied medical care by defendant Nurse Anthony, and that plaintiff was deprived of clothing and toilet paper over night. Plaintiff also alleges that he was later improperly charged with misbehavior to cover up the assault. Plaintiff seeks substantial monetary relief.

Presently before the court[2] is plaintiff's motion for summary judgment pursuant to FED. R.

---

[1] In the complaint, plaintiff named a defendant "Havck," however, the correct spelling of this defendant's name is "Hauck," and this court will refer to the defendant with the proper spelling of his name.

[2] The parties are advised that the referral to a Magistrate Judge as provided for under Local Rule 72.3 has been rescinded for purposes of this motion, and as such, any appeal taken from this order will be to the Court of Appeals for the Second Circuit.

CIV. P. 56. (Dkt. No. 26).  Defendants have responded in opposition to the motion, and plaintiff has filed a reply. (Dkt. Nos. 27, 28).  For the following reasons, this court agrees with defendants and will deny plaintiff's motion.

**DISCUSSION**

1.   **Summary Judgment**

Summary judgment may be granted when the moving party carries its burden of showing the absence of a genuine issue of material fact. FED. R. CIV. P. 56; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) (citations omitted).  "Ambiguities or inferences to be drawn from the facts must be viewed in the light most favorable to the party opposing the summary judgment motion." *Id*.  However, when the moving party has met its burden, the nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  At that point, the nonmoving party must move forward with specific facts showing that there is a genuine issue for trial. *Id*.

2.   **Facts**

Plaintiff claims that on December 3, 2006, he was on his way to the yard when Corrections Officer (CO) True stopped plaintiff and him that he was going to be "pat-frisked." Compl. ¶ 1.[3]  Plaintiff states that after the frisk was completed by Officers True and Olszewski, plaintiff noticed that one of his bags was not returned to him. Compl. ¶ 2.  When plaintiff inquired about the bag, CO True told plaintiff that the bag was contraband. *Id.*  Plaintiff states that when he questioned CO True's statement, plaintiff was told that he had "too much of an attitude" and was

---

[3] Plaintiff has submitted a form-complaint, however, his factual statement is attached at the end of the form. Plaintiff has listed his facts in numbered paragraphs, and this court's citations to the complaint are the numbered paragraphs contained in the attachment.

going to be sent back to his cell. *Id.* Plaintiff states that he was escorted back to his cell by CO True. *Id.*

Plaintiff claims that when they got back to the cell block, CO True told plaintiff that he was going to be keeplocked, however, the block officer told CO True that he was going to have to "lock [plaintiff] in himself because there were no other officers on the block to do so. Compl. ¶ 3. As a result, plaintiff states that he was taken "up the stairs" to a different area and "locked in" by CO True. *Id.* Plaintiff claims that at approximately 10:20 a.m., the cell door opened, he was handcuffed, and escorted to the Special Housing Unit (SHU) by defendant Fischer and three other officers who have not been named as defendants. *Id.*

Plaintiff claims that he then noticed that defendant Gray was putting on, what appeared to be, leather gloves. *Id.* Plaintiff states he was then told to follow defendant Gray into the "frisk room," accompanied by defendants Fischer and Farrell. *Id.* Plaintiff states that defendant Hauck stood in the doorway. *Id.* Once inside the "frisk room," plaintiff claims that he was told to place his hands up against the wall, and his glasses were taken away from him by defendant Gray. Compl. ¶ 4. Plaintiff then describes how defendant Gray began punching plaintiff until plaintiff fell to the ground, where plaintiff was "slapped in [the] head and kicked in [the] back, buttocks, and leg area" by defendants Fischer and Farrell. *Id.* Defendant Hauck allegedly stood by and watched the assault without intervening to stop the abuse.

Plaintiff then claims that when the beating stopped, defendant Fischer told plaintiff to get up, but plaintiff could not comply with the order because the beating aggravated plaintiff's back injury. Compl. ¶ 5. Plaintiff claims that defendant Fischer stated that defendant Anthony told him that there was nothing wrong with plaintiff's back, and then defendant Fischer kicked plaintiff in the back again. *Id.* Plaintiff claims that the abuse continued as defendant Farrell dragged plaintiff

3

on the floor and then picked plaintiff up and "slammed" him against the wall. *Id.* Plaintiff claims that defendant Nurse Anthony was called, but that she did not give plaintiff any medical care, rather, she just looked at him and stated "that's a refusal." *Id.* Plaintiff states that ultimately his clothes were taken away from him and he was forced to spend the night with no clothes and no toilet paper. Plaintiff does state that after the incident on December 3, 2006, Nurse Norde visited plaintiff and asked if he was injured. Compl. ¶ 4. Plaintiff claims that he told her he was injured, and although she asked if he wanted medication for the pain, plaintiff told the nurse that he already had a prescription for pain medication, so she only gave him Bacitracin for the laceration on his arm. *Id.*

Plaintiff states that the next day, someone from "Mental Health" came to visit plaintiff to interview him. Compl. ¶ 6. Plaintiff claims that this individual told plaintiff that defendant Fischer reported that plaintiff was going to kill himself. *Id.* Plaintiff claims that when he told the mental health professional that the statement was a lie, the clinician told the officer to immediately give plaintiff back his clothes. *Id.* Plaintiff states that despite this order, he did not get his clothes, mattress, sheets and blanket back until approximately five hours later. *Id.*

Plaintiff also claims that he told Superintendent Brown about the incident, but that Superintendent Brown told plaintiff that his officers did not "beat up on inmates." Compl. ¶ 7. Plaintiff states that Sergeant Green came to take photographs of his injuries, but that plaintiff was also given two fabricated misbehavior reports, claiming that he banged his own head against the wall during the frisk. *Id.* As defendants, plaintiff names CO George Gray; CO Thomas Farrell; Sergeant Ronald D. Fischer; Lt. Raymond Hauck; and Nurse Nancy Anthony.

**3.     Excessive Force**

The Eighth Amendment prohibits the "'unnecessary and wanton infliction of pain.'"

*Baker v. Willett*, 42 F. Supp. 2d 192, 196 (N.D.N.Y. 1999)(quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976); *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  When the use of excessive force is alleged, the court must determine whether the force "was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Whitely v. Albers*, 475 U.S. 312, 320-21 (1986)(quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied*, 414 U.S. 1033 (1973)).  In order to meet the constitutional standard for excessive force, the defendants' conduct must be "'inconsistent with the contemporary standards of decency' and 'repugnant to the conscience of mankind.'" *Whitely*, 475 U.S. at 327.

There is an objective and a subjective prong to the Eighth Amendment analysis. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991).  The objective prong is satisfied when plaintiff shows that the deprivation was "sufficiently serious," and the subjective prong is satisfied by showing that defendants had a "wanton state of mind." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999). Minor uses of physical force do not reach the constitutional level as long as the force used is not "repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). However, the court must determine the need for the force, the relationship between the need and the amount of force used, the extent of the injury suffered, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response. *Whitely*, 475 U.S. at 321.

Plaintiff moves for summary judgment on the excessive force claim.  Plaintiff states that "[i]t cannot be disputed that the defendant's [sic] action was wanton." Pl. Memorandum of Law at 16 (Dkt. No. 26).  In support of his motion, plaintiff has submitted his own statement of the facts, together with some medical records and a copy of the misbehavior reports. *Id.* Exhibits A-C. Plaintiff has also submitted a statement of material facts.  Defendants, however, dispute all of

5

plaintiff's facts, and state that they have had insufficient opportunity for discovery.

Because the defendants dispute the very facts surrounding this incident, plaintiff cannot argue that the facts are not disputed, and the court cannot make the determination that defendants violated plaintiff's Eighth Amendment rights as a matter of law. The defendants dispute that they acted "wantonly," and even plaintiff's own exhibits show that the defendants' version of the incidents in question are different than plaintiff's version. These are exactly the type of material facts that prevent the court from granting summary judgment. The medical records submitted by plaintiff are inconclusive. On December 3, 2006, the plaintiff's Ambulatory Health Record contains an entry by Nurse Norde stating that an x-ray was ordered, but finding only a "small laceration" on plaintiff's right elbow that was cleansed, and plaintiff was issued Bacitracin ointment. Pl. Ex. A at 1. The next entry shows that plaintiff requested tinted glasses, and the CO was "informed to issue tinted glasses." *Id.* at 2.

As stated above, the party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact in dispute. Since defendants dispute the very facts that would constitute the violation, this court cannot grant summary judgment in favor of plaintiff on the excessive force claims.

**4.     Medical Care**

In order to state an Eighth Amendment claim based on constitutionally inadequate medical treatment, the plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). As in excessive force claims, two elements, objective and subjective, make up the deliberate indifference standard. *Smith v. Carpenter*, 316 F.3d 178, 183-84 (2d Cir. 2003). The objective element measures the severity of the deprivation, while the subjective element ensures that the

6

defendant acted with a sufficiently culpable state of mind. *Id.* at 184 (citing *inter alia Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).

In order to meet the first element of the standard, plaintiff must show that he has a sufficiently serious illness or injury. *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition has been considered "sufficiently serious" when there is a "condition of urgency," one that may result in death, degeneration, or extreme pain. *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). The seriousness of a plaintiff's medical need may also be determined by reference to the effect of denying the particular treatment. *Sonds v. St. Barnabas Hosp. Correctional Health Services*, 151 F. Supp. 2d 303, 310 (S.D.N.Y. 2001)(citation omitted). Thus, if unnecessary and wanton infliction of pain results from the denial of treatment, or if the denial of treatment causes the inmate to suffer a lifelong handicap or permanent loss, the condition may be considered "sufficiently serious." *Id.* (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)).

In order to meet the second element of the standard, plaintiff must demonstrate more than an "inadvertent" or negligent failure to provide adequate medical care. *Id.* (citing *Estelle*, 429 U.S. at 105-106). Instead, plaintiff must show that the defendant was "deliberately indifferent" to that serious medical condition. *Id.* In order to rise to the level of deliberate indifference, the defendant must have known of and disregarded an excessive risk to the inmate's health or safety. *Id.* (citing *Chance*, 143 F.3d at 702). The defendant must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must draw that inference. *Chance*, 143 F.3d at 702 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

Disagreement with prescribed treatment does not rise to the level of a constitutional claim.

7

*Sonds*, 151 F. Supp. 2d at 311.  Prison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates. *Id.* (citations omitted).  An inmate does not have the right to treatment of his choice. *Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986). The fact that plaintiff might have preferred an alternative treatment or believes that he did not get the medical attention he desired does not rise to the level of a constitutional violation. *Id.*

Thus, disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment. *Sonds*, 151 F. Supp. 2d at 312 (citing *Estelle*, 429 U.S. at 107).  Even if those medical judgments amount to negligence or malpractice, malpractice does not become a constitutional violation simply because the plaintiff is an inmate. *Id. See also Daniels v. Williams*, 474 U.S. 327, 332 (1986)(negligence not actionable under section 1983).  Thus, any claims of malpractice, or disagreement with treatment are not actionable under section 1983.

In this case, plaintiff claims that after the alleged assault, defendant Anthony came into the room, looked at plaintiff, and stated "that's a refusal." Compl. ¶ 5.  With his motion for summary judgment, plaintiff submits defendant Anthony's entry in plaintiff's Ambulatory Health Record indicating that plaintiff "refused to answer any questions." Pl. Ex. A at 1.  The entry states that the examination was "per security request" and that plaintiff was examined in his "SHU smock." *Id.*  Defendant Anthony then stated that there were "no abrasions, contusions, or lacerations noted." *Id.*  No other claims are made against defendant Anthony.

Based on the evidence presented, this court cannot find that there is no question of fact regarding defendant Anthony's actions in this case.  Plaintiff's burden on summary judgment is to show that the facts are undisputed, however, defendants deny all the material facts stated in plaintiff's papers.  Plaintiff has not even submitted medical records that show that plaintiff had

8

any injury other than a small laceration on his elbow. There are no records showing the result of any x-rays that were taken. At this point, all the facts regarding this incident are questioned. Thus, this court cannot grant summary judgment in favor of plaintiff. Discovery must continue.

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's motion for summary judgment (Dkt. No. 26) is **DENIED**.

IT IS SO ORDERED

Dated: August 27, 2008

Norman A. Mordue
Chief United States District Court Judge